UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS ALLEN VOSHELL,                               No. 10-11409

        Petitioner,                               District Judge Thomas L. Ludington

v.                                                  Magistrate Judge R. Steven Whalen

SHERRY BURT,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

      Before the Court is Petitioner Dennis Allen Voshell's Petition for Writ of Habeas Corpus, brought under 28 U.S.C. § 2254, challenging the constitutionality of his incarceration in a Michigan prison. He was sentenced to a prison term of 50 to 180 months following his plea of guilty in the Roscommon County Circuit Court to a charge of second degree criminal sexual conduct ("CSC II"), M.C.L. 750.520c(1)(a). The matter has been referred for Report and Recommendation (R&R) pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that the petition be DENIED.

### I.   PROCEDURAL AND FACTUAL BACKGROUND

      On March 17, 2009, Petitioner pled guilty in the Roscommon County Circuit Court, the Honorable Michael J. Baumgartner, presiding, to one count of CSC II. In exchange for his plea, the prosecutor agreed to dismiss three other CSC II charges, as well as a habitual offender charge. (Tr. 3-17-09, 3-4).[1] At the plea proceeding, Petitioner

---

[1] A person convicted as a second habitual offender would be subject to a maximum sentence of one and one-half times the maximum sentence prescribed for a first offense. M.C.L. § 769.10. Thus, if Petitioner were convicted of CSC II as a habitual offender, he would be subject to a maximum sentence of 22 ½ years, rather than 15 years.

stated that no other promises or threats were made to induce him to plead guilty, and that he understood the rights he would be giving up by pleading guilty. *Id*., 4-7. He stated that he was satisfied with his attorney, and declined an invitation to discuss that matter further with his lawyer. *Id.*, 3, 6. Petitioner offered the following factual basis for his plea:

> THE COURT: And what happened that makes you guilty of this offense?
>
> THE DEFENDANT: I was there. I touched her right here, I guess like that (indicating).
>
> THE COURT: You are indicating you touched her in the genital area?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: And how old is she?
>
> THE DEFENDANT: I think she was twelve.
>
> THE COURT: All right.  And you knew it was wrong when you did it?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: So you touched her in her genital area?
>
> THE DEFENDANT: Yes.
>
> THE COURT: That is contact.  Is that sufficient Mr. - -
>
> MR. JERNIGAN (the Prosecutor): Yes, your Honor.
>
> THE COURT: And the motion you made indicated to the front of her vaginal area; is that right?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Further questions?
>
> MR. JERNIGAN: No, your Honor.
>
> THE COURT: Mr. Daniel?
>
> MR. DANIEL (Defense Counsel): No, just briefly. That was over top of her clothes, is that correct?
>
> THE DEFENDANT: Yes.

    MR. DANIEL: And there is no - - you are not presenting any type of a medical excuse or examination, nothing like that?

    THE DEFENDANT: No, no.

    MR. DANIEL: I have no further questions, your Honor.

    MR. JERNIGAN: I guess I should ask, your Honor- - the contact that you had with her was in a sexual nature?

    THE DEFENDANT: No.

    MR. JERNIGAN: Well, you indicated in you statement that you also rubbed her breast areas and her buttocks also; is that correct?

    THE DEFENDANT: Yes.

    MR. JERNIGAN: So were those reasons that you did that were for some medical purpose?

    THE DEFENDANT: Just to help her aches and pains.

    MR. JERNIGAN: She has aches and pains in her breasts and her vagina?

    THE DEFENDANT: Yes, it is for sexual purposes.

    MR. JERNIGAN: Thank you.

    THE COURT: It is for your gratification, not for hers?

    THE DEFENDANT: Yes, right. *Id.*, 7-10.

At sentencing on April 21, 2009, Petitioner's counsel noted that the Probation Department had recommended a sentence "for the high end of the sentencing guideline range of fifty-seven months," and went on to argue in mitigation of sentence. (Tr. 4-21-09, 2-3). During his own allocution, the Petitioner told the judge that he "really would like to go home with the sentence," to which the judge replied, "I don't think that is possible, Mr. Voshell. You score twenty-nine months on the minimum so you are going to be in the prison system." *Id.*, 3. The Petitioner then expressed some doubt as to whether the offense occurred:

> THE DEFENDANT: Because I really don't think this matter even happened, period.
>
> THE COURT: You don't think it happened?
>
> THE DEFENDANT: No. *Id.*, 3-4.

Following argument by the prosecutor, the judge sentenced Petitioner to a term of 50 to 180 months imprisonment. *Id*., 5.

After sentencing, Petitioner requested, and was granted assigned appellate counsel, who filed a delayed application for leave to appeal to the Michigan Court of Appeals on September 2, 2009. Petitioner raised four assignments of error in the Court of Appeals:

> (1) Petitioner was deprived of due process and equal protection where the trial court accepted a plea "that was not legally made."
>
> (2) Petitioner was deprived of due process and equal protection where the trial court mis-scored the Michigan Sentencing Guidelines.
>
> (3) The trial judge deprived Petitioner of due process and equal protection where he failed to consider all mitigating evidence at sentencing.
>
> (4) The trial judge violated the Michigan and Federal constitutions where he sentenced Petitioner to 50 to 180 months for CSC II.

On September 2, 2009, Petitioner also filed a motion to remand in the Court of Appeals, asking that court to remand the case to the trial court for a hearing on the issue of ineffective assistance of counsel. On October 7, 2009, the Court of Appeals entered an order denying leave to appeal and denying the motion to remand.

Petitioner then filed a *pro se* application for leave to appeal to the Michigan Supreme Court. A perusal of the handwritten application, the typewritten brief in support (which appears to have been prepared by someone other than the Petitioner), and the other materials submitted with the application fairly supports the conclusion that the

Petitioner raised the following issues in the Supreme Court:

> (1) Petitioner was deprived of his constitutional rights where the judge mis-scored the sentencing guidelines.
>
> (2) The trial judge deprived Petitioner of due process and equal protection where he failed to consider all mitigating evidence at sentencing.
>
> (3) The trial judge violated the Michigan and Federal constitutions where he sentenced Petitioner to 50 to 180 months for CSC II.
>
> (4) Petitioner was denied the effective assistance of counsel at his plea and sentencing.

To the extent that Petitioner's *pro se* application is a general attack on the Court of Appeals' denial of leave "for lack of merit," it could also be construed to raise the first claim he made in the Court of Appeals, that he was deprived of due process and equal protection where the trial court accepted a plea "that was not legally made."

The Supreme Court denied leave to appeal on December 21, 2009.

Petitioner filed his petition in this Court on April 8, 2010. Because it was unclear what issues of federal law he was raising–he appeared to argue a general claim of innocence–I ordered Petitioner to submit a more definite statement, pursuant to Fed. R. Civ. P. 8(a)(2). On June 2, 2010, Petitioner filed a handwritten statement [Doc. #8]. Giving this *pro se* pleading a fair and liberal construction, as I must,[2] the Petitioner raises the following issues in this Court:

> 1. Petitioner's plea was not knowing and voluntary.

---

[2] *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

2. The Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel where his attorney failed to advise him of the consequences of the plea, failed to properly investigate his case, and failed to present mitigating evidence at sentencing.

3. The judge mis-applied the Michigan Sentencing Guidelines.

4. The trial judge violated the Michigan and Federal constitutions where he sentenced Petitioner to 50 to 180 months for CSC II.

5. The Petitioner is innocent of the offense to which he pled guilty.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §2254(d), governs this Court's habeas corpus review of state court decisions. In *Williams v Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that in order to justify a grant of habeas corpus relief under the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*, 529 U.S. at 412.  Under subsection (d)(1), habeas relief may not be granted unless (1) the state court decision was contrary to established federal law, or (2) the state court decision involved an unreasonable application of clearly established federal law.  *Williams* held that a state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this court has on a set of materially indistinguishable facts." *Id* at 413.  *Williams* further held that a state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this court's decisions but

unreasonably applies that principle to the facts of a prisoner's case." *Id.*

### III.   DISCUSSION

#### A.   Exhaustion

The Respondent construes the petition as raising only "a general claim of innocence," and that this claim was not exhausted in the state courts. *Respondent's Brief*, p. 8.

A prisoner is required to exhaust his or her available state remedies before a federal court may grant a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A).  To satisfy the exhaustion requirement, a habeas petitioner must "fairly present" the substance of each federal constitutional claim in state court.  *Picard v. Connor*, 404 U.S. 270, 275-78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).  This means that the claim in state court "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."  *Gray v. Netherland*, 518 U.S. 152, 162-63, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996).  It is not sufficient for the petitioner to present the state courts "only with the facts necessary to state a claim for relief."  *Id.*

A review of the state court appellate pleadings shows that Petitioner has consistently raised a claim of innocence. I find that this claim has been exhausted. I also find that Issue 2 (Petitioner was deprived of the effective assistance of counsel), Issue 3 (the judge mis-applied the Michigan Sentencing Guidelines), and Issue 4 (the trial judge violated the Michigan and Federal constitutions where he sentenced Petitioner to 50 to 180 months for CSC II) were fairly raised, and thus exhausted in the Michigan courts. However, Issue 1 (Petitioner's plea was not knowing and voluntary), while raised in the Court of Appeals, was not included in Petitioner's application for leave to appeal to the Supreme Court, and has therefore not been exhausted.

Ordinarily, a district court will dismiss without prejudice a habeas petition containing unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." In the present case, the petition should be denied for lack of merit in all of the issues that have been raised. I will therefore proceed to a discussion of the merits.

### B. Validity of the Plea

In his motion to remand in the Michigan Court of Appeals, Petitioner argued that he was not aware of the consequences of pleading guilty, that he was forced into pleading guilty, and that he did not plead voluntarily. He asked the Court to remand the case so that he could withdraw his plea.

To be constitutionally valid, a plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A defendant who pleads guilty must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Further, in *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."

The Petitioner's claims that he did not understand the consequences of his plea, and that he was coerced into pleading, is completely contradicted by the record, including his own sworn statements. The judge painstakingly explained all of the rights that

Petitioner would be waiving by pleading guilty, as well as the potential sentencing consequences. The Petitioner stated, under oath, that he understood the rights he would be waiving, and that he understood what charges would be dismissed as the result of the plea bargain. He stated, under oath, that no threats or promises were made beyond what was in the plea agreement, and that he was satisfied with his attorney. In fact, he declined an invitation to discuss that matter further with his lawyer. And toward the conclusion of the plea proceeding, after Petitioner had been advised of all of his rights, and after he offered a factual basis for the plea, the following colloquy occurred:

> THE COURT: Are you aware of any promises, threats or inducements not on the record, Mr. Daniel?
>
> MR. DANIEL: No, your Honor.
>
> THE COURT: Mr. Jernigan?
>
> MR. JERNIGAN: No, your Honor.
>
> THE COURT: Mr. Voshell, you understand I have made no agreement with your attorney or the prosecutor regarding the plea or possible sentence, and I haven't seen a presentence report from Mr. Catrell's office so I don't know what it is going to be. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Is that correct, Mr. Daniel?
>
> MR. DANIEL: That is correct, your Honor.
>
> THE COURT: Mr. Jernigan?
>
> MR. JERNIGAN: Yes, your Honor.
>
> THE COURT: *Still want me to accept your plea?*
>
> THE DEFENDANT: *Yes.*
>
> THE COURT: *Any reservations or second thoughts at all?*
>
> THE DEFENDANT: *No*. (Tr. 3-17-09, 10-11) (emphasis added).

A review of the Petitioner's guilty plea colloquy shows that his plea was voluntary, knowing and intelligent, and therefore completely consistent with the standards of due process articulated by the Supreme Court in *Boykin v. Alabama* and *Brady v. United States*. Petitioner has made no showing of "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 418 (1969). There has been neither misapplication nor unreasonable application of clearly established federal law, nor has Petitioner met his burden of showing that the state courts unreasonably determined any facts.

### C. Ineffective Assistance of Counsel

The Sixth Amendment guarantees the accused in a criminal prosecution the right to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-part test for assessing claims of ineffective assistance. First, did the attorney make errors "so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment," 466 U.S. at 687. To establish deficient performance under this prong of *Strickland*, the defendant must show that his attorney's representation "fell below an objective standard of reasonableness." *Id.*, at 688. The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To meet the prejudice standard, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Where ineffective assistance is alleged in the context of a guilty plea, it must be

shown that counsel's performance was deficient and that the deficient performance caused the defendant to reach a different decision regarding the plea. *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To satisfy the "prejudice" prong of *Strickland*, the defendant must show that but for counsel's errors, he or she would not have pled guilty, but would have insisted on going to trial. *Hill*, 474 U.S. at 58-59; *Warner* v. *United States*, 975 F.2d 1207, 1214 (6th Cir. 1992)(prejudice shown if defendant shows a reasonable probability that but for counsel's defective advice, he would not have pled guilty).

As with the plea voluntariness issue, Petitioner's ineffective assistance arguments are defeated by his own statements on the record, including his acknowledgment that he was satisfied with his counsel's representation. Any claim that his lawyer failed to advise him of the consequences of his plea, or of the rights he would be waiving, is also contradicted by the record, which shows that the judge explained all of his rights, and he stated under oath that he understood. One of the rights he gave up–and which he now claims he wants to exercise–was the right to cross-examine the complaining witness at trial. However, that, and any other non-jurisdictional defects, were waived by his plea of guilty. *See See United States v. Ormsby,* 252 F.3d 844, 848 (6th Cir.2001) ("A voluntary and unconditional guilty plea waives all non jurisdictional defects in the proceedings .").

Petitioner also claims that his attorney was ineffective at sentencing because he failed to present mitigating evidence. However, the Petitioner did not inform the Michigan courts, and has not informed this Court, as to exactly what mitigating evidence was omitted. There is no factual substance to Petitioner's argument. In fact, the plea transcript shows that counsel did present the sentencing judge with information that Petitioner suffered from bipolar syndrome, cognitive limitations, and alcoholism, that his

client had no other history of sex offenses, and that this was "an isolated incident basically caused by Mr. Voshell being an alcoholic." (Tr. 4-21-09, 2-3). And the judge sentenced Petitioner to a minimum term of 50 months, lower than the top end of the guidelines range of 57 months.[3]

The Petitioner has not shown that the Michigan courts unreasonably applied either prong of *Strickland*.

### D. Misapplication of the Michigan Sentencing Guidelines

Petitioner alleges miscalculation of his sentencing guidelines. This is an issue of state, not federal law. It is well-settled that errors of state law are not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("federal courts can not review a state's alleged failure to adhere to its own sentencing procedures").

### E. Challenge as to Sentence

Petitioner claims that the trial judge violated the Federal constitutions where he sentenced him to 50 to 180 months for CSC II. While he does not cite a specific constitutional provision, I will generously construe his claim as arising out of the Eighth Amendment's ban on cruel and unusual punishment.[4] However, "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual

---

[3] To the extent that Petitioner is here raising his state court issue that the judge erred in failing to consider mitigating evidence, that argument would fail for similar reasons, including the fact that he has not identified any "mitigating evidence" that the judge failed to consider.

[4] There is no other reasonable construction of Petitioner's claim, at least under federal law. Any other possible challenge to the length of the sentence would be based on state law, and hence not cognizable in this Court. *Estelle v. McGuire, supra*.

punishment.'" *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (quoting *United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994)). *See also Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000)("As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'")(quoting *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)).  Here, the Petitioner's sentence was within both the statutory limits and the sentencing guideline range.  Furthermore, even under Michigan law, a sentence within the guidelines is presumptively proportional. *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990).  Certainly under federal law, Petitioner's sentence of 50 to 180 months is neither "extreme" nor "grossly disproportionate" so as to violate the Eighth Amendment.  *Harmelin v. Michigan*, 501 U.S. 957, 959, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).  *See also Austin v. Jackson, supra* (40 to 60 year sentence for second degree murder not violative of Eighth Amendment).

### F. Actual Innocence

Throughout his post-conviction proceedings, and notwithstanding his plea of guilty, Petitioner has claimed that he is innocent of this offense.

As the law currently stands, a stand-alone claim of actual innocence is not the basis for habeas relief, but rather "a basis upon which a habeas petitioner may have an independent constitutional claim considered on the merits, even though his habeas petition would otherwise be regarded as successive or abusive." *Herrera v. Collins*, 506 U.S. 390, 416-417, 113 S.Ct. 853, 122 L.Ed. 2d 203 (1993). Moreover, a claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness

account, or critical physical evidence-that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Even assuming that Petitioner could present a free-standing claim of actual innocence, he has presented no extrinsic evidence to support such a claim. He states at page 5 of his original petition that he had a witness to call at trial, but he has not identified that witness or indicated what the testimony would be.  Significantly, Petitioner pled guilty in open court, and gave a factual basis for the offense, under oath. This is inconsistent with his claim of innocence. As the Supreme Court stated in *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), "[s]olemn declarations in open court carry a strong presumption of veracity." *See also Loving v. Mahaffey,* 27 Fed. Appx. 925, 926 (10th Cir.2001) (noting that a claim of actual innocence is difficult to establish when a defendant pleads guilty to the offense); *Catala v. Bennett,* 273 F.Supp.2d 468, 474 (S.D.N.Y.2003) (same).[5]

### IV.    CONCLUSION

For these reasons, I recommend that the Petition for Writ of Habeas Corpus be DENIED.  I further recommend that the Court DENY A CERTIFICATE OF APPEALABILITY because the Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2).

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D.

---

[5] At least one judge in this district has held that a claim of actual innocence is a non-jurisdictional issue that is waived by a plea of guilty. *Al-Tamimi v. Warren*, 2007 WL 3408581, *4 (E.D.Mich.,2007)(Edmunds, J.), citing *United States. v. Dungee,* 228 Fed. Appx. 298, 303 (4th Cir.2007). Given Petitioner's lack of sufficient support for a claim of actual innocence, and the "strong presumption" of the veracity of his statements under oath at the plea proceeding, it is not necessary to decide whether a guilty plea is an absolute bar to consideration of an actual innocence claim.

Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
UNITED STATES MAGISTRATE JUDGE

Dated: March 17, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 17, 2011.

s/Susan Jefferson
Case Manager